UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. 06-80424

CIV-MIDDLEBROOKS

MAGISTRATE JUDGE JOHNSON

Jonathan Elliott, formerly D.B.A,
"Evolve Talent Agency",
    Plaintiff,

vs.

Church of Scientology,
    Defendant

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF**

**Three-Judge District Court Requested**

The Plaintiff, Jonathan Elliott, avers on knowledge as to himself and his own acts and on information and belief as to all other matters as follows:

### NATURE OF THE ACTION

1. The Church of Scientology violated and continues to violate The Sherman Act and The Clayton Act. In accordance with Florida Evidence Statute Title VII Chapter 90.201 these matters must be judicially noticed. Evolve Talent Agency was damaged in the marketplace by the Church of Scientology discrimination in hiring procedures and restraint of trade. Evolve Talent Agency began as a sole

1



proprietorship in Los Angeles California in September of 1999 and was unable to afford the renewal of the insurance bond and California State Talent Agency license in May of 2004. Evolve Talent Agency ceased to engage in all commercial, television and film business enterprise at that time. Plaintiff is now a resident of Delray Beach, Florida.

## JURISDICTION AND VENUE

2. The Plaintiff brings forth this complaint in accordance with Florida Statutes Title VI Chapter 47.011. The District court has proper original jurisdiction of this matter according to the Clayton Act 15 U.S.C 1 §25 - Restraining violations; procedure. "The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of this Act,."

3. The District Court of Florida has jurisdiction in the matter in accordance with 15 U.S.C. 1 § 4 Jurisdiction of courts; duty of United States attorneys; procedure. "The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of sections 1 to 7 of this title;."

4. The complaint falls within the time specifications delineated in 15b U.S.C. § 4b. "The Clayton Act", Limitation of actions: "Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of

action barred under existing law on the effective date of this Act shall be revived by this Act."

## THE PLAINTIFF

5. The Plaintiff is a resident of Palm Beach County residing at 321 S.W. 8th St., Delray Beach, Florida 33444. This would make the United States District Court Southern District of Florida the most convenient forum.

## THE DEFENDANT

6. The Defendant, Church of Scientology, can be found at 1966 S. Congress Ave, West Palm Beach, Florida 33407. The Church holds property and offices worldwide. The Church of Scientology is present in the Southern Florida District and engages in weekly seminars and services within the District.

## COURSE OF CONDUCT

7. While the Church of Scientology has made strident efforts to penetrate the Entertainment Industry by targeting celebrities for recruitment in their organization in an effort to gain their endorsement to further develop and grow their organization, the Church of Scientology has at the same time effectuated a practice of discriminating against groups not aligned to their organization. The natural progression of this economic and numerical growth alongside their declared

restrictions has created a classic monopoly situation in the fields of entertainment and entertainment related industry.

## CLAIMS FOR RELIEF

## CLAIM 1

**The Church of Scientology has combined its membership and ordered them to restrict and restrain trade in the Entertainment industries of commercials, television and film. This is in violation of 15 U.S.C. § 1.**

8. The relevant geographic market is the world.

9. Church of Scientology has the power to exclude competition.

10. There is no legitimate justification for the Church of Scientology conduct.

11. Evolve Talent Agency has suffered and will continue to suffer injury to its business and property.

## CLAIM 2

**Willful Maintenance of a Monopoly**

**In Violation of Sherman Act, Section 2**

4

12. Church of Scientology conduct has caused and will continue to cause injury to the relevant market in the form of reduced competition and consumer choice.

13. Church of Scientology hiring ethics and its secret and discriminatory bestowal of special services and privileges, tend to diminish and destroy competition in the relevant entertainment market.

14. Church of Scientology has engaged in intentional wrongful conduct.

## CLAIM 3

**Willful violation of 13 U.S.C § 2 "The Clayton Act." Discrimination in price, services, or facilities Price; selection of customers.**

15. Through unwarranted discrimination the Church of Scientology has diminished the integrity of businesses, destroyed competition and effectively prevented further competition. In so doing, the Church of Scientology has gained an effective monopoly of the hiring process in Hollywood.

16. Church of Scientology actions were independently wrongful as they violated federal and state law, were in restraint of trade, and were independently tortious.

17. Church of Scientology's intentional, wrongful conduct resulted in the actual disruption of Evolve Talent Agency relationships with third parties. As set forth above, Church of Scientology conduct caused these third parties (i) to cease purchasing Evolve Talent Agency talent, (ii) to limit the purchases from Evolve Talent Agency, (iii) to abstain from purchasing Evolve Talent Agency talent, (iv) to withdraw from participating in Evolve Talent Agency promotions.

18. Evolve Talent Agency has suffered economic harm proximately caused by Church of Scientology's conduct of discrimination in the marketplace.

19. Church of Scientology is not entitled to the "competition privilege" because Church of Scientology employed improper means and intended to create and/or continue an illegal restraint of trade.

20. Church of Scientology acted both oppressively and maliciously with intent to cause injury to Evolve Talent Agency and with conscious disregard for the rights of others. As such, Evolve Talent Agency is entitled to punitive and compensatory damages as permitted by law.

**CLAIM 4**

**The Church of Scientology violates 14 U.S.C. § 3 "The Clayton Act". Sale, etc., on agreement not to use goods of competitor.**

21. Through the solicitation and sales of their books, the Church of Scientology has explicitly forbidden the utilization of competitor's products and services.

22. The Church of Scientology has gained the understanding of their membership not to use other services.

23. The Church of Scientology has engaged in conduct with anticompetitive effects to unlawfully maintain and enhance its monopoly in the relevant market, to stifle competition and to eliminate consumer choice through unlawfully exclusionary behavior. The following excerpts from a Church of Scientology publication are of great probative value, it clearly directs its patrons to refuse the membership and hiring services of competition. This set the stage for monopoly.

"Suppressive Acts
11. Continued membership in a divergent group
14. Being at the hire of anti-Scientology groups or persons;"

**[Hubbard, *Introduction to Scientology Ethics* (1967)]**

24. The Church of Scientology engaged in illegal high pressure sales tactics. See "The Scientology Story" (Los Angeles Times series) by Joel Sappell and Robert W. Welkos, "Part 2: The Selling of a Church, Church Markets Its Gospel with High-Pressure Sales", (Monday, 25 June 1990, page A1:1). "Church members

are warned that unless they keep purchasing Scientology services, misery and sickness may befall them. For the true believer, this is a powerful incentive to keep buying whatever the group is selling. "See Id. "Hubbard said Scientology must be marketed through the "art of hard sell," meaning an "insistence that people buy." He said that, "regardless of who the person is or what he is, the motto is, 'Always sell something....' Hubbard contended that such high-pressure tactics are imperative because a person's spiritual well being is at stake. Among other things, he directed his followers to: "rob the person of every opportunity to say 'No.' "; "help prospects work through financial stops impeding a sale"; "make the prospect think it was his idea to make the purchase"; utilize the two man "tag team" approach, and "overcome and rapidly handle any attempted prospect backout." See Holland Furnace Co. v. ETC, 295 F.2d 302 (7th Cir. 1961); cf. Arthur Murray Studio, Inc. v. EW, 458 F.2d 622 (5th Cir. 1972) (emotional high-pressure sales tactics, using teams of salesmen who refused to let the customer leave the room until a contract was signed). See also "Statement of Basis and Purpose, Cooling-Off Period for Door-to-Door Sales", 37 Fed. Reg. 22934, 22937-38 (1972).

//////

## FACTUAL BACKGROUND

25. In accordance with Florida Statute Title VII Chapter 90.401 the Plaintiff offers the Defendant's own public positions as relevant, substantial and competent evidence.

26. This Church of Scientology ethic is conclusively in strict violation of 14 U.S.C. §3, "The Clayton Act". It is also a violation of 13 U.S.C. §2 and restraint of trade as defined by 15 U.S.C. § 1.  Moreover the policy of L. Ron Hubbard was and continues to be restrictive, prejudicial, unreasonable and pernicious, creating enmity in the community and fear among its members.   Plaintiff believes it is in the public welfare to find these violations. See the findings of Congress in 15 U.S.C. Chapter 74 § 4801 **(2)** "the United States economy benefits when business, labor, government, academia, and public interest groups work together cooperatively"

27. See Business Electronics V. Sharp Electronics, 485 U.S. 717 (1988) held "The term 'restraint of trade' in the Sherman Act, like the term at common law before the statute was adopted, refers not to a particular list of agreements, but to a particular economic consequence, which may be produced by quite different sorts of agreements in varying times and circumstances."

28. See Eastman Kodak Co. V. Image Tech. Svcs. 504 U.S. 451 (1992) "Having found sufficient evidence of a tying arrangement, we consider the other necessary feature of an illegal tying arrangement appreciable economic power in the tying market. Market power is the power "to force a purchaser to do something that he would not do in a competitive market." Jefferson Parish, 466 U.S. at 14.9.

29. "The antitrust laws' primary purpose is to protect interbrand competition," see, e. g., Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 726." State Oil Co. v. Khan, 522 US 3 (1997) "Although most antitrust claims are analyzed under a "rule of reason," under which the court reviews a number of relevant factors, see, e. g., Arizona v. Maricopa County Medical Soc., 457 U.S. 332 , 342343, some types of restraints on trade have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful per se, see , e. g., Northern Pacific R. Co. v. United States , 356 U.S. 1 , 5" Business Electronics V. Sharp Electronics, 485 U.S. 717 (1988) "Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. 1. Since the earliest decisions of this Court interpreting this provision, we have recognized that it was intended to prohibit only unreasonable restraints of trade. National Collegiate Athletic Assn. v. Board of Regents of University of Oklahoma, 468 U.S. 85, 98 (1984); see, e. g., Standard Oil Co. v. United States, 221 U.S. 1, 60 (1911). Ordinarily, whether particular concerted action violates 1 of the Sherman Act is determined through case-by-case application of the so-called rule of reason - that is, "the factfinder weighs all of the

circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." Continental T. V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49 (1977). "

## SUMMARY

30. Plaintiff complains that his sole proprietorship, Evolve Talent Agency, was rendered defunct by the Church of Scientology as a natural progression of the Church's prejudicial ethics directing their membership away from people "divergent" of their organization. The Church gained a monopoly of trade in the entertainment field through various means. First, making a determined effort to recruit the celebrity marketplace in order to develop a growing number of members and second, by restricting and restraining trade in the entertainment field through their documented and heretofore mentioned policies (see Hubbard, Introduction to Scientology Ethics (1967)). The targeting of celebrity's to promote the Church of Scientology's interests and gain is clear.

31. More notes from the Church of Scientology appear online:

(1) "Celebrities are very Special people and have a very distinct line of dissemination. They have comm lines that others do not have and many medias to get their dissemination through."

11

From Flag Order 3323, 9 May 1973, published in Woroni (student newspaper of Australian National University) Vol. 49 #2, Thu 20 Mar 1997, p18.

(2) "one of the major purposes of the Celebrity Centre and its staff is to expand the number of celebrities in Scientology." (Scientology Flag Order 2310)

(3) "As far back as 1955, Hubbard recognized the value of famous people to his fledgling, off-beat church when he inaugurated "Project Celebrity." According to Hubbard, Scientologists should target prominent individuals as their "quarry" and bring them back like trophies for Scientology." Los Angeles Times, Joel Sappell and Robert W. Welkos,"Part 2: The Selling of a Church, The Courting of Celebrities Monday", 25 June 1990, page A18:5.

## **DEFINITIONS**

32. "'Industrial sabotage' means malicious injury to work or to an industrial undertaking." AUSTRALIAN INDUSTRIAL RELATIONS COMMISSION Workplace Relations Act 1996 s.45 appeal Chubb Security Australia Pty Ltd and John Thomas (C No. 23124 of 1999).  This definition is submitted with consideration to Florida Statute Title VII Chapter 90.202 Section 4 "Matters which may be judicially noticed. A court may take judicial notice of the following matters, to the extent that they are not embraced within s. 90.201: (4) Laws of foreign nations and of an organization of nations."

33. A paper by Jon Atack, delivered at the Dialog Centre International conference in Berlin, October 1995 discusses the nature of this sabotage.

"On June 10, 1960, Hubbard issued a seemingly innocent Bulletin saying that not all scientologists need be professional 'auditors', or counselors. He encouraged his followers to bring Scientology to the society through their jobs. He praised those who had already exerted influence: 'These people ... drove a wedge for themselves into companies, societies, with Scientology and then took over control of the area.' On 23 June, Hubbard extended his design with the Special Zone Plan: 'a nation or state runs on the ability of its department heads, its governors, or any other leaders. It is easy to get posts in such areas ... Don't bother to get elected. Get a job on the secretarial staff or the bodyguard ... don't seek the co-operation of groups. Don't ask for permission."

34. The above report speaks to all generally conceived notions of corporate espionage, industrial sabotage and finally, international terrorism (also refer to the above "The Scientology Story", Sappell and Welkos) In U.S. v. Heldt et. al., the facts showed that church personnel had secreted a documentary evidence of crime, (688 F.2d at 1243 n.8), had committed illegal break-ins and theft (id. at 1244,1247,1248), had electronically bugged government offices (ibid), had lied to federal investigators and a grand jury (id. at 1246, 1247, 1248, 1249, 1253), had

13

suborned perjury (id. at 1247, 1253), had forcibly restrained, kidnapped, handcuffed and gagged a potential adverse witness (id. at 1244, 1273), and had formulated conspiracies to obstruct justice, steal government property, burglarize, bug, harbor fugitives from justice, and commit and suborn perjury before the grand jury (id. at n. 27 at 1258). In a memorandum urging stiff sentences for the Scientologists, federal prosecutors wrote:

"The crime committed by these defendants is of a breath and scope previously unheard of. No building, office, desk, or file was safe from their snooping and prying. No individual or organization was free from their despicable conspiratorial minds. The tools of their trade were miniature transmitters, lock picks, secret codes, forged credentials and any other device they found necessary to carry out their conspiratorial schemes. "

35. Notwithstanding, the Plaintiff asks the District Court of Florida to order landmark changes in the government's gracious acknowledgement of the Church of Scientology's status as a religious organization (in accordance with U.S.C Title 50, 1801 Definitions. §4). "As used in this subchapter: (a) 'Foreign power' means— (4) a group engaged in international terrorism or activities in preparation therefor;"

14

36. Defining a group of individuals "terrorists" is no small task. In fact, this is something Loren Hubbard himself did to Psychiatrists. See L. Ron Hubbard in "Freedom Scientology" early in 1969, "International Edition No. 1" "TODAY'S TERRORISM. While western countries are spending billions fighting terrorist activities abroad they are neglecting the one they have at home. The psychiatrist and his front groups operate straight out of the terrorist text- books. "

## CONCLUSION

37. Plaintiff puts forth in this complaint that the Church of Scientology has been so enthusiastic about their plans to achieve expansion through celebrity endorsement that for all practical purposes, vis a vis the recruitment of membership throughout the gamut of Hollywood production (Scientology Flag Order 2310, Flag Order 3323, 9 May 1973), The Church of Scientology has combined and conspired to monopolize trade in the entertainment industry. What is more, the process of this conspiracy among Church of Scientology members is clearly documented in the Church of Scientology's own published works. While growing in popularity, the Church of Scientology has refused to honor the integrity of competitive products and services. What is more, The Church of Scientology has distributed by sales of literature and their free dissemination, the writings and

teachings of L. Ron Hubbard to Church of Scientology members and gained their understanding. Juxtapositioning U.S. Code with these writings it becomes apparent that these Church of Scientology ethics are both unreasonable and detrimental in free enterprise. Competition was diminished by Church of Scientology's restriction of trade and by marketplace discrimination. The Church of Scientology has gained a monopoly in the entertainment industry hiring process. As a defunct participant in the hiring process, Jonathan Elliott is entitled to relief in accordance with 15 U.S.C. § 1 , 15 U.S.C. § 2 and 15 U.S.C. § 26.

///////////

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Jonathan Elliott

**(b)** County of Residence of First Listed Plaintiff: West Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS
Church of Scientology

County of Residence of First Listed Defendant: West Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

CIV-MIDDLEBROOKS 06-80424 MAGISTRATE JUDGE JOHNSON

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

9:06 CV 80424-DMM-Johnson

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | TORTS (PERSONAL INJURY) | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☑ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO
JUDGE                           DOCKET NUMBER

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
15 U.S.C 1   15 U.S.C. 2   13 U.S.C.2   14 U.S.C. 3   Cause: restraint of trade and monopoly

LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $4,500,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD: Jonathan Elliott, in proper
DATE: 4/25/06

FOR OFFICE USE ONLY
AMOUNT     RECEIPT #     IFP